```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

---

```
   METROPOLITAN LIFE INSURANCE        1:16-cv-358 (NLH/KMW)
   COMPANY,
                                             OPINION
           Plaintiff,

      v.

   JOAN M. HARRIS, MARK J.
   DANTONI, PATRICIA BRINSTER,
   CAROLE PLATAS, JAMES
   LLEWELLYN MATHEWS, AS TRUSTEE
   OF THE SAMUEL J. DANTONI AND
   MARILYN H. DANTONI TRUST,

           Defendants.
```

---

**APPEARANCES**:

JOAN M. HARRIS
P.O. BOX 34
MILLERSVILLE, MARYLAND 21108
    Appearing pro se

MARK J. DANTONI
P.O. BOX 1071
MEDFORD, NEW JERSEY 08055
    Appearing pro se

PATRICIA BRINSTER
43 RADNOR BLVD.
MARLTON, NEW JERSEY 08053
    Appearing pro se

CAROLE PLATAS
121 W. DOMINION DRIVE
MARLTON, NEW JERSEY 08053
    Appearing pro se

JAMES LLEWELLYN MATHEWS, Trustee
EAST GATE CENTER

309 FELLOWSHIP ROAD
SUITE 200
MOUNT LAUREL, NEW JERSEY 08084
    On behalf of Defendant James Llewellyn Mathews

**HILLMAN, District Judge**

This matter arises from a Complaint in Interpleader filed by Plaintiff Metropolitan Life Insurance Company.  Defendant Joan Harris moves for the release of life insurance funds to her, which this Court construes as a motion for summary judgment.[1]  This motion is unopposed by all other defendants, with the exception of Defendant Mark Dantoni ("Dantoni").  Based on a genuine issue of material fact raised by Dantoni regarding Decedent Samuel Dantoni ("Decedent")'s mental capacity at the time he made Harris a beneficiary, the Court will deny Harris's motion for summary judgment.

However, after a review of the record as whole and for the reasons that follow, this Court believes that the proper resolution of this matter is a distribution of the contested funds equally between Harris, Dantoni, Patricia Brinster, and Carole Platas pursuant to a 2015 General Release signed by Defendants.  Accordingly, pursuant to Federal Rule of Civil Procedure 56(f), the Court hereby gives notice to the parties of

---

[1] This Court granted interpleader relief for Plaintiff prior to deciding this motion, but after said motion was filed.

2

its intention to enter summary judgment *sua sponte* as delineated below and in the Court's accompanying Order. The parties will be afforded thirty days to contest this Opinion and Order before the Court.

I.

Decedent, the insured, was covered by Plaintiff under the Federal Employees' Group Life Insurance Policy (the "FEGLI Policy"). Harris, Dantoni, Brinster, and Platas are Decedent's four children. The FEGLI Policy, issued by Plaintiff to the United States Office of Personnel Management (OPM) pursuant to the Federal Employees' Group Life Insurance Act, 5 U.S.C. § 8701 et seq., provided life insurance benefits that became payable upon death.[2] The Office of Federal Employees' Group Life Insurance (OFEGLI) is an administrative unit of Plaintiff responsible for administering the claims process for the FEGLI Policy, which begins following the death of an insured. Upon the death of an insured, documents from the deceased's personnel

---

[2] 5 U.S.C. § 8705(a) provides, in part:

> [T]he amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing . . . .

3

file that are relevant to the adjudication of a claim are forwarded to OFEGLI by OPM, which is responsible for recordkeeping for retired employees under the FEGLI Policy. OFEGLI then adjudicates the claim.

The most recent Beneficiary Designation form in Decedent's file, dated August 25, 2013, named Harris as the sole primary beneficiary to receive one hundred percent of the FEGLI Benefits. The prior Beneficiary Designation form on file for Decedent, dated July 21, 2011, named Marilyn Dantoni, wife of Decedent, as the sole primary beneficiary to receive one hundred percent of the FEGLI Benefits. Marilyn Dantoni died on February 24, 2013.

In May 2013, Decedent completed an assignment form assigning his interest in his FEGLI coverage to the Trustee(s) or Successor Trustee(s) of the "Samuel J. Dantoni and Marilyn H. Dantoni Trust, dated 1/19/2011" (the "Assignment"). The Assignment was never processed by OPM, pursuant to instructions provided by Decedent to OPM in a submission dated August 30, 2013, whereby Decedent purportedly rescinded the Assignment and instructed that the FEGLI Benefits should be paid pursuant to the 2013 Beneficiary Designation, which named Harris as the sole primary beneficiary.

Following Decedent's death on October 24, 2014, James Llewellyn Mathews, Esq., as Trustee of the Samuel J. Dantoni and

4

Marilyn H. Dantoni Trust, submitted a Statement of Claim seeking the FEGLI Benefits on behalf of the Trust.  In January 2015, Harris submitted a Statement of Claim seeking the FEGLI Benefits.  By letter dated March 13, 2015, OFEGLI told Mathews the Trust's claim was denied because the Trust was not named as Decedent's beneficiary on the latest Beneficiary Designation form completed by Decedent on August 25, 2013.  Later that month, Mathews wrote to OFEGLI and advised that Decedent's FEGLI Benefits were assigned to the Trust by the Assignment.

In May 2015, OFEGLI received a letter from Dantoni stating Harris fraudulently completed the 2013 Beneficiary Designation form without Decedent's knowledge.  Later that month, Dantoni submitted a Statement of Claim seeking the FEGLI Benefits.  In June 2015, Dantoni wrote to OFEGLI alleging that the Trust was not validly formed and that the Assignment was invalid, because Decedent was declared incompetent by a Maryland court in 2012.

On October 23, 2015, Plaintiff was told by its prior counsel that Decedent's children were unable to resolve their competing claims to the FEGLI Benefits.  On that same day, Plaintiff was also told that Mathews filed an October 15, 2015 complaint in New Jersey Superior Court, seeking an order permitting him to serve as the attorney-in-fact for Decedent's four children for the purpose of receiving the FEGLI Benefits.

Thereafter, Plaintiff was told the claimants resolved their

competing claims and agreed the FEGLI Benefits would be divided equally between the Decedent's four children, Defendants Harris, Dantoni, Brinster, and Platas. Plaintiff proposed a general release memorializing the agreement and releasing Plaintiff from any further liability with respect to the FEGLI Policy or the FEGLI Benefits payable as a result of Decedent's death.

Mathews signed the General Release on December 10, 2015. Brinster signed the General Release on December 11, 2015. Dantoni and Harris signed the General Release on December 12, 2015. Platas signed the General Release on December 15, 2015. However, by a December 22, 2015 e-mail, Dantoni told Plaintiff he was rescinding his agreement until further notice. By e-mail dated January 11, 2016, Dantoni told Plaintiff that "since there was no valid agreement until all parties have signed, mailed and had the Agreement received and reviewed by you for validity, my notification to you is timely and as such it is my position that <u>I have rescinded my Release Agreement per my e-mail to you dated December 22, 2015</u>." By e-mail dated January 12, 2016, Harris stated the General Release could not be rescinded.

Plaintiff commenced this action by filing its January 19, 2016 Complaint in Interpleader.[3] Defendants Harris, Brinster,

---

[3] This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331. Decedent was covered by a federally provided life insurance policy, provided by his federal employer, pursuant to a federal statute. This is

Platas, and Mathews, as Trustee of the Trust, answered the Complaint in Interpleader.

Plaintiff tried to serve Dantoni, who evaded Plaintiff's efforts. By a September 20, 2016 Order, Magistrate Judge Karen M. Williams granted Plaintiff's motion seeking an order permitting substitute service on Dantoni. Plaintiff served Dantoni by e-mail on December 20, 2016, after other attempts to serve Dantoni were unsuccessful.

By an October 20, 2016 Order, Judge Williams granted

---

sufficient to confer federal question jurisdiction on this Court. See, e.g., Metropolitan Life Ins. Co. v. Johnson, No. 14-811, 2015 WL 1945398, at *2 (D. Colo. Apr. 29, 2015) (finding federal question jurisdiction where "the Decedent's Policy was issued pursuant to FEGLI and the proceeds became payable pursuant to FEGLI"); Metropolitan Life Ins. Co. v. Pritchett, 843 F. Supp. 1006, 1007 (D. Md. 1994) (finding federal question jurisdiction where "Plaintiff s[ought] a declaratory judgment . . . as to the rightful beneficiary of life insurance benefits which are payable under the Federal Employees' Group Life Insurance Act"). It also appears this Court has diversity jurisdiction under 28 U.S.C. § 1335, which provides, in pertinent part:

> The district courts shall have original jurisdiction of any civil action of interpleader . . . if . . . [t]wo or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation . . . .

Viewing the case as a whole, the minimal diversity required by § 1335 exists, as it appears one claimant is a citizen of Maryland and others are citizens of New Jersey.

7

Plaintiff's application to deposit the FEGLI Benefits with the Court. In accordance with that Order, Plaintiff sent a check in the amount of $61,610.00 to the Clerk of the Court, which was deposited by the Clerk into the Registry on November 4, 2016.

Plaintiff moved for interpleader relief on January 25, 2017. On July 26, 2017, this Court found Plaintiff met the requirements of the interpleader statute and was relieved from liability. Thus, the Court granted Plaintiff's motion for interpleader relief, dismissing Plaintiff from this action with prejudice.

On April 18, 2017 (prior to this Court granting interpleader relief), Harris moved for the release of life insurance proceeds to her. On May 1, 2017, Matthews, Platas, and Brinster all filed separate letters with this Court stating they do not oppose the motion. Dantoni filed opposition.

**II.**

The Court construes the motion for release of life insurance proceeds as a motion for summary judgment. See Metropolitan Life Ins. Co. v. Leonis, No. 14-1104, 2015 WL 1262114, at *1 (N.D. Cal. Mar. 18, 2015) (construing a motion to distribute FEGLI benefits as a motion for summary judgment).

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

Notably for this case, the Court is permitted, "[a]fter giving notice and a reasonable time to respond," to

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party; or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed. R. Civ. P. 56(f).

### III.

The Court first addresses Dantoni's failure to answer the complaint and his lack of involvement in this case until filing his opposition to this motion. Courts "tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings." Mala v. Crown Bay Marina, Inc., 704 F.3d 239 (3d Cir. 2013). Indeed, this is an "obligation" for district courts, "driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" Higgs v. Attorney Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) (alteration in original) (quoting Tristman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006)).

The Court interprets Dantoni's April 5, 2017 letter and May 11, 2017 response to Harris's motion as an answer to the

11

complaint. See, e.g., Travelodge Hotels, Inc. v. JC & APR Invs., LLC, No. 13-3280, 2014 WL 3620945, at *2 (D.N.J. July 22, 2014) (finding a letter "served the function of a timely-filed Answer," prompting the court to "liberally construe that letter as an Answer"); U.S. v. Hoy-Nielsen, No. 12-1220, 2013 WL 4766438, at *1 (W.D. Pa. Sept. 4, 2013) (construing "a pro se, typed response" as an answer to the complaint); Metropolitan Life Ins. v. Harris, No. 07-12342, 2008 WL 2095384, at *1-2 (E.D. Mich. May 16, 2006) (construing an "Answer to Show Cause," filed in response to an Order to Show Cause, as an "answer and appearance in th[e] action as a pro se litigant" after the defendant failed to file an answer to the complaint); Gavenas v. Kurtz, No. 98-2789, 1999 U.S. Dist. LEXIS 13392, at *12 (E.D. Pa. Aug. 18, 1999) (construing a "pro se letter as an answer to the complaint").[4]

In opposition to Harris's motion, Dantoni asserts that Decedent was diagnosed with psychosis and dementia in September 2009 and that he could not legally designate a beneficiary after September 7, 2012. Viewing the documents attached to Dantoni's opposition, the Court concludes there is a genuine issue of material fact with regard to Decedent's mental capacity at the

---

[4] The Court acknowledges that, even construing these filings as an answer, the "answer" was untimely. However, given the leniency this Court affords to pro se litigants, Dantoni will not be penalized for his untimely response.

12

time he completed the 2013 Beneficiary Designation form.

A July 11, 2011 Physician's Certificate diagnosed Decedent with senile dementia and determined the disability "prevents the patient from making or communicating responsible decisions concerning the patient's property and/or person."  An August 9, 2011 Physician's Certificate also diagnosed Decedent with dementia, which had "progressed to the point that the patient can no longer make responsible financial or health care decisions."  In a September 7, 2012 Order for the Appointment of a Guardian, the Maryland Circuit Court for Anne Arundel County found Decedent "lacking sufficient understanding or capacity to make or communicate responsible decisions concerning his person, including provisions for health care, food, clothing, or shelter."  While this Order did not reference financial decisions specifically, this Court finds the Maryland Order and the two Physician's Certificates provided by Dantoni are sufficient to deny Harris's motion for summary judgment.

While the Court is denying summary judgment for Harris, the Court's review of the record as a whole suggests an obvious resolution of this case, as it appears the siblings and Mathews entered into a binding settlement over the distribution of the life insurance funds in 2015.  "The validity of a contract is a question of law, which it is the court's sole province to answer."  Pinebrook Minerals, LLC v. Anadarko E & P Co., LP, No.

11-177, 2011 WL 3584783, at *8 (M.D. Pa. July 25, 2011).

The 2015 General Release provided: "[T]he Releasors have agreed that the FEGLI Benefits should be divided and paid in four equal shares to Patricia Brinster, Mark Dantoni, Joan Harris, and Carole Platas, with each receiving $15,250, plus 25% of any applicable interest."[5] It further provided: "This Release shall not be modified, amended or superseded except in writing signed by each Releasor and MetLife." On December 12, 2015, Dantoni signed this General Release, certifying that "ANY AND ALL PAST, PRESENT AND FUTURE CLAIMS AND CAUSES OF ACTION RELATED TO THE POLICY BENEFITS, AS SET FORTH ABOVE, ARE HEREBY FULLY AND FOREVER RELEASED AND EXTINGUISHED."

However, Plaintiff's Complaint in Interpleader stated that, on December 22, 2015, Dantoni advised Plaintiff he was rescinding his agreement to the General Release until further notice. By a January 11, 2016 e-mail, Dantoni stated: "Since there is no valid agreement until All parties have signed, mailed and had the Agreement received and reviewed by you for its validity, my notification to you is timely and as such it is my position that <u>I have rescinded my release agreement per my email to you dated December 22, 2015</u>."

---

[5] The "Releasors" were defined in the General Release as "Patricia Brinster, Mark Dantoni, Joan Harris, and Carole Platas."

14

A contract is binding on parties when it demonstrates there was a "meeting of the minds" and mutual assent between the parties to be bound by the contract. The Court finds the signing of the General Release sufficient evidence of the claimants' mutual assent.

The Court finds no legal authority for Dantoni's assertion, as stated in Plaintiff's Complaint in Interpleader, that the agreement was not binding at the time he attempted to rescind because "ALL parties [had not] signed, mailed, and had the Agreement received and reviewed by [MetLife] for its validity." Plaintiff's Complaint in Intervenor states "Dantoni advised counsel for MetLife that he rescinded his agreement to the General Release as of December 22, 2015, both prior to MetLife's receipt and review of the General Release bearing his signature and prior to it being signed on behalf of the Trust."

The General Release was signed by all claimants. While not signed by Plaintiff, Plaintiff was not claiming an entitlement to the funds. Rather, the General Release was solely amongst the siblings and the trustee. The General Release did not contain a provision stating it was only valid upon mail or receipt by Plaintiff, or only upon review by Plaintiff or approval by Plaintiff. Accordingly, upon signing, the claimants created a legally binding agreement. Further, Mathews signed the agreement on December 10, 2015, twelve days prior to

15

Dantoni's attempted rescission. This Court can find no factual support for the allegation that Dantoni's December 22, 2015 rescission occurred prior to Mathews' signing of the agreement. The notarization of the General Release says otherwise.[6]

Finding the General Release resolves who is entitled to the life insurance funds, the Court determines Harris, Dantoni,

---

[6]  The Court finds the Limited Release Agreement between Mathews and the siblings has no effect on this determination. In Mathews' answer, the following facts were asserted. Mathews and the siblings agreed to execute a Limited Release Agreement, which would release Mathews from claims of breach of fiduciary duty. Mathews claims his agreement to the General Release was conditioned on the prior receipt of the Limited Release Agreement signed by all parties to that document. He claims Dantoni's signed Limited Release Agreement arrived by mail on Monday, December 21, 2015. That same day, Dantoni e-mailed Mathews rescinding his signature. Mathews did not sign the Limited Release Agreement until January 5, 2016, after he received Dantoni's rescission e-mail.

The Court notes that the General Release contains an "Entire Agreement" provision:

> This Release constitutes the entire agreement of Releasors with Releasees. This Release cancels and supersedes any and all prior agreements and negotiations by and between Releasors with Releasees. This Release does not incorporate any additional agreement beyond the terms of this Release that may have been made by the Releasors. This Release shall not be modified, amended or superseded except in writing signed by each Releasor and MetLife.

Mathews asserted that, if Dantoni's rescission was effective, Mathews' signature to the General Release is rendered ineffective. The Court need not reach whether Dantoni effectively rescinded his agreement to the Limited Release Agreement because the General Release is binding, does not incorporate that contract, and specifically contains an "Entire Agreement" clause excluding any binding effect the Limited Release Agreement might have had.

Brinster, and Platas are each entitled to a one-quarter share of the life insurance proceeds.

The Court notes Brinster and Platas both, by way of separate April 27, 2017 letters, did not oppose Harris's motion and "<u>fully support[ed] the Motion</u> to have the life insurance proceeds paid to Joan Harris as the valid beneficiary." Why they would relinquish their shares after agreeing to resolve the dispute over the funds is unclear. Nonetheless, pursuant to the General Release, Brinster and Platas are entitled to a one-quarter share of the life insurance proceeds and the Court intends to distribute the funds accordingly. What Brinster and Platas do with the funds afterwards in entirely up to them.

The Court further notes that this is not the outcome requested by the moving party, Harris, nor is it the outcome requested by the opposing party, Dantoni.[7] However, pursuant to Federal Rule of Civil Procedure 56(f), this Court is permitted to grant relief to a non-moving party and on a basis not propounded in the moving papers. Accordingly, unless Defendants show cause within 30 days of the date of this Opinion as to why this disbursement of the life insurance funds is improper or

---

[7] The Court acknowledges, however, that this was the relief requested in the answers filed by Harris, Platas, and Brinster. All three answers call for the enforcement of the General Release. Mathews' answer states similarly, although conditioned on finding the Limited Release Agreement binding.

unlawful, the Court will disburse them as detailed above.

An appropriate Order will be entered.


Date: November 21, 2017          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.